The Honorable Michelle L. Peterson

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> v. <br> JAMAL GARDNER, <br> Defendant | NO. MJ21-562 <br><br> COMPLAINT FOR VIOLATION <br><br> 18 U.S.C. §§ 922(g)(1) |

BEFORE The Honorable Michelle L. Peterson, United States Magistrate Judge, United States Courthouse, Seattle, Washington.

The undersigned complainant duly sworn states:

## COUNT ONE
### *(Felon in Possession of Firearms)*

On or about March 11, 2021, in Bothell, within the Western District of Washington, JAMAL GARDNER, knowing that he had been convicted of the following crimes punishable by imprisonment for a term of one year, to wit:

    i.   *Rape in the Third Degree,* in cause number 00-1-00398-9 in the Superior Court of Whatcom County, on or about May 8, 2001;

UNITED STATES v. GARDNER/COMPLAINT – 1
USAO #2021R00967

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ii. *Taking a Motor Vehicle Without Permission in the Second Degree,* in cause number 06-1-00516-4 in the superior court of Spokane County, on or about May 4, 2006;

iii. *Assault in the Second Degree (two counts),* in cause number 08-1-00259-7 in the Superior Court of Whatcom County, on or about May 21, 2008;

iv. *Failure to Register,* in cause number 16-1-01832-31, in the Superior Court of Snohomish County, on or about June 24, 2019; and

v. *Possession of Stolen Vehicle, Forgery (two counts), Second Degree Possession of Stolen Property, and Second Degree Identity Theft,* in cause number 16-1-02574-31, in the Superior Court of Snohomish County, on or about June 24, 2019;

did knowingly possess, in and affecting interstate and foreign commerce, the following firearms:

i. a Valmet, model M88 Hunter, .243 WIN caliber rifle, bearing the serial number 359236; and

ii. a Thompson/Center Arms, model Super 14 Contender, .223 Remington caliber top-break pistol, bearing the serial number 264818.

All in violation of Title 18, United States Code, Section 922(g)(1).

## AFFIANT BACKGROUND

1. I, Special Agent Matthew P. Wear, am a duly sworn member of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since February 2005. I am currently assigned to the Seattle Group V, located in the Seattle, Washington Field Division. Seattle Group V is responsible for investigating federal firearm violations and combatting violent crime, including gang activity. As an ATF Special Agent, I have successfully completed the Criminal Investigations Training Program (CITP) and the ATF National Academy Special Agent Basic Training (SABT) at the Federal Law Enforcement Training Center. As a result of my training and experience as a Special Agent for ATF, I am familiar with the federal firearms and narcotics statutes. During the course of my career, I have conducted and/or participated in multiple

UNITED STATES v. GARDNER/COMPLAINT – 2
USAO #2021R00967

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

investigations involving federal firearms, narcotics, and RICO violations. I have debriefed defendants facing firearms and narcotics charges about their and other violators' criminal activities. I have received advanced training in the investigation of firearms offenses and I have written, participated in, and have knowledge of the execution of search and arrest warrants for numerous firearms, narcotics, and RICO violations.

2. The information in this complaint is based on my investigation, along with investigation by other law enforcement officers, conversations with law enforcement officers, and review of law enforcement documents. It also does not purport to state every fact known to law enforcement, but rather only to establish probable cause to conclude that JAMAL GARDNER committed the charge set forth above.

## SUMMARY OF PROBABLE CAUSE

3. On March 11, 2021, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent Hunt, working in an undercover capacity, was introduced via a confidential source (CS) to an individual who had been previously identified as Defendant JAMAL GARDNER. Prior to this meeting, GARDNER had communicated with the CS about the fact that he had four firearms for sale and had sent him pictures of the firearms. Those pictures depicted a pistol grip shotgun, two handguns, and a semi-automatic rifle. The CS was not aware that Special Agent Hunt is a law enforcement officer and believed Special Agent Hunt to be an associate of another individual being investigated for criminal activity by ATF and the Snohomish Regional Drug Task Force (SRDTF).

4. On March 10, 2021, the CS advised SRDTF Detective Dan Rucker that they were in the middle of brokering a firearms deal between GARDNER and Special Agent Hunt. According to the CS, GARDNER had asked for $1,700 for the four firearms but Special Agent Hunt did not want to pay this much. The CS said that the parties were continuing to work out an agreed-upon price, but that they had all agreed to meet the next day so that Special Agent Hunt could purchase the firearms.

5. On March 11, 2021, the CS advised Detective Rucker that GARDNER had agreed to meet with him and Special Agent Hunt in a parking lot of a Bartell's Drug store

UNITED STATES v. GARDNER/COMPLAINT – 3
USAO #2021R00967

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  located near 18001 Bothell Everett Highway, in Bothell, Washington. Surveillance units
2  took up positions in and around the area. Detective Rucker searched the CS and found a
3  small amount of cash, a pocket-knife and five ibuprofen and one Viagra on the CS's
4  person. Detective Rucker took possession of these items until the conclusion of the
5  controlled purchase. Another law enforcement officer searched the CS's vehicle and found
6  no drugs, money, weapons, or other contraband.

7        6.      At law enforcement direction, the CS then called GARDNER and activated
8  the phone speaker. Law enforcement heard a male voice confirm that they would be
9  meeting in a few minutes. After this phone call, officers followed the CS's vehicle to the
10  meeting location in the Bartell's parking lot. Shortly thereafter, at approximately 7:25
11  p.m., Special Agent Hunt pulled into the parking lot and the CS got into Special Agent
12  Hunt's vehicle. Surveillance officers also observed an older white Ford Mustang that was
13  already parked in a back section of the parking lot. They also saw a male dressed in a
14  black and white camouflage sweatsuit, subsequently identified as GARDNER, exit the
15  Mustang and use his cell phone.

16        7.      The CS placed a call to GARDNER, who was standing near the Ford
17  Mustang. GARDNER then instructed the CS and Special Agent Hunt to come over to
18  him. Special Agent Hunt drove around, with the CS, behind the buildings to a back
19  section of the lot where GARDNER's white sedan was parked. GARDNER was on foot
20  next to the buildings, approximately fifty feet away from his vehicle. Special Agent Hunt
21  parked next to GARDNER and got out of his vehicle to meet with him.

22        8.      Upon meeting Special Agent, GARDNER initially expressed concern
23  because he had been under the impression that Special Agent Hunt was Mexican, but
24  nevertheless agreed to negotiate the firearms purchase. GARDNER described the three
25  firearms that he had brought to sell, one of which he described as a black powder gun.
26  Special Agent Hunt told GARDNER, in sum, that he did not know what a black powder
27  gun was and that he was not interested in it. Special Agent Hunt asked to see the guns
28  GARDNER had brought.

UNITED STATES v. GARDNER/COMPLAINT – 4
USAO #2021R00967

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

9. GARDNER then placed a call to a female who was sitting inside his vehicle and instructed her to get out of the car, get the firearms from the trunk, and bring them over to them. Special Agent Hunt then observed a heavyset Caucasian female, who appeared to Special Agent Hunt to be in her thirties, retrieve a black duffle bag from the trunk of GARDNER's vehicle and carry it over to Special Agent Hunt. Special Agent Hunt opened the trunk of his vehicle, and the female placed the bag inside.

10. GARDNER explained to Special Agent Hunt and the CS that he (GARDNER) did not want to touch the firearms, saying "I'm a felon like a motherfucker. I got 21 points," alluding that his prior convictions would result in a high criminal history category that would cause him to serve a lengthy prison sentence if he were caught. Special Agent Hunt then opened the bag and observed one rifle and two handguns. GARDNER explained, in detail, how they worked, describing the rifle as a "Finnish AK" and explaining that the pistol fired one shot, "the same round as an AR." GARDNER instructed Special Agent Hunt how to open and load the pistol. GARDNER told Special Agent Hunt that the pistol had two firing pins and could be equipped with another barrel to accept different caliber ammunitions. Special Agent Hunt asked GARDNER if he had even shot the guns and GARDNER replied in the affirmative. Special Agent Hunt asked him if the guns worked and GARDNER answered in an annoyed manner that "yeah they work" and confirmed again that he had shot them.

11. Special Agent Hunt complained to GARDNER that the only firearm he really wanted was the pistol grip shotgun that GARNDER had previously described to the CS. GARDNER replied that he was not willing to sell that firearm at this time because "I needed it. We needed it." Based upon his training and experience as an undercover officer, Special Agent Hunt interpreted this to meet that GARDNER and his associates needed the pistol grip shotgun for protection. GARDNER further explained that he hoped he did not have to use the pistol grip shotgun, but that he would sell it once he did.

12. GARDNER told Special Agent Hunt that he could sell the rifle alone for $800.00. Special Agent Hunt told GARDNER that he would purchase the three firearms

UNITED STATES v. GARDNER/COMPLAINT – 5
USAO #2021R00967

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

for $800.00 and GARDNER accepted this offer. Special Agent Hunt then paid GARDNER in $800.00 in buy funds that he had been provided prior to the deal by SRDTF Detective Rucker. Special Agent Hunt then gave GARDNER his phone number and GARDNER agreed to call Special Agent Hunt at a later time. GARDNER then walked back to his vehicle and drove away. Special Agent Hunt then drove the CS back to his/her vehicle, dropped him/her off and then drove away. This concluded the March 11, 2021 controlled purchase.

13. After the completion of the controlled purchase operation, the firearms purchased by SA Hunt from GARDNER were taken into law enforcement custody. Subsequent examination of the firearms revealed that GARDNER had sold SA Hunt the following firearms: (1) one Valmet, model M88 Hunter, .243 WIN caliber rifle, bearing the serial number 359236; (2) one Thompson/Center Arms, model Super 14 Contender, .223 Remington caliber top-break pistol, bearing the serial number 264818; and (3) F.LLI Pietta, Fabrica D'Armi, model "New Model Army," .44 caliber black powder revolver, bearing the serial number 104517. I am further aware that black powder firearms,, such as the F.LLI Pietta, Fabrica D'Armi revolver that GARDNER sold to SA Hunt is not considered a firearm under the Gun Control Act, but rather is defined as an antique firearm" under the Act. *See* 18 U.S.C. § 921(A)(16).

14. I have reviewed court records from various courts in the State of Washington, and therefore am aware that JAMAL GARDNER has prior felony convictions for which he was sentenced to, and served, more than twelve months of imprisonment. These convictions include:

UNITED STATES v. GARDNER/COMPLAINT – 6
USAO #2021R00967

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

       i.     One conviction for *Rape in the Third Degree,* in cause number 00-1-00398-9 in the Superior Court of Whatcom County, on or about May 8, 2001;

       ii.     One conviction for *Taking a Motor Vehicle Without Permission in the Second Degree,* in cause number 06-1-00516-4 in the superior court of Spokane County, on or about May 4, 2006;

       iii.     Two convictions for *Assault in the Second Degree,* in cause number 08-1-00259-7 in the Superior Court of Whatcom County, on or about May 21, 2008;

       iv.     One conviction for *Failure to Register,* in cause number 16-1-01832-31, in the Superior Court of Snohomish County, on or about June 24, 2019; and

       v.     One conviction for *Possession of Stolen Vehicle*, two convictions for *Forgery*, one conviction for *Second Degree Possession of Stolen Property*, and one conviction for *Second Degree Identity Theft*, in cause number 16-1-02574-31, in the Superior Court of Snohomish County, on or about June 24, 2019.

15.     I have consulted ATF Special Agent Catherine Cole, who is an expert at conducting interstate nexus reviews, regarding the firearms referenced in Count One of the Complaint. She advised me that the Valmet, model M88 Hunter, .243 WIN caliber rifle, bearing the serial number 359236, was manufactured by Valmet in Finland, and imported into the United States by Valmet, Inc. in the state of New York. She further advised me that the Thompson/Center Arms, model Super 14 Contender, .223 Remington caliber top break pistol, bearing the serial number 264818, was manufactured by Thompson/Center Arms Co., Inc. in the state of New Hampshire. Based upon this information, I can conclude that both firearms referenced in Count One of the Complaint were manufactured outside of the State of Washington, and therefore had traveled in interstate and/or foreign commerce.

//

//

UNITED STATES v. GARDNER/COMPLAINT – 7
USAO #2021R00967

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

16. Based upon the foregoing and my training and experience, I respectfully submit there is probable cause to believe that JAMAL GARDNER committed the crime of Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g)(1).

Dated this  20th  day of October, 2021.

*Matthew Wear*
MATTHEW P. WEAR
Special Agent, Bureau of Alcohol, Tobacco,
Firearms & Explosives

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit, and based on the Complaint and Affidavit, the Court hereby finds that there is probable cause to believe that the Defendant committed the offense set forth in the Complaint.

THE HON. MICHELLE L. PETERSON
United States Magistrate Judge

UNITED STATES v. GARDNER/COMPLAINT – 8
USAO #2021R00967

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970